UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JESSICA ANNE MARIE FOUST, | Case No. 6:21-cv-01440-MTK |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| JON HYDE, Captain, OSCI; G. ROSS, Captain OSCI; GARFIELD, OSCI Correctional Officer (C/O); and JOHN and JANE Does 1-20, ODOC/OSCI/OSP employees whose identities are presently unknown to Plaintiff but who were involved in the violation alleged herein, | |
| Defendants. | |

**KASUBHAI,** United States District Judge:

Plaintiff, an inmate at Oregon Department of Corrections, brought this action under 42 U.S.C. § 1983, alleging that Defendants violated her Eighth and Fourteenth Amendment rights under the United States Constitution. Before the Court is Defendants' Motion for Summary Judgment (ECF No. 105), Plaintiff's Motion for Summary Judgment (ECF No. 91), and Plaintiff's Motion to Disqualify Witness (ECF No. 144). For the reasons below, Plaintiff's motions for summary judgment and to disqualify witness are denied, and Defendants' motion for summary judgment is granted in part and denied in part.

## BACKGROUND

Plaintiff is a transgender female. Pl. Decl. 1, ECF No. 91-1. Prior to September 8, 2020, Plaintiff was housed as an adult in custody ("AIC") at the Oregon State Correctional Institution ("OSCI"). Porter Decl. ¶¶ 3, 4, 6, ECF No. 107. On September 8, 2020, the State of Oregon instituted an emergency evacuation of the AICs at OSCI due to encroaching wildfires. *Id.* at ¶¶ 6-7. Plaintiff was moved to the Oregon State Penitentiary ("OSP"), where she was housed until her return to OSCI on September 15, 2020. *Id.* at ¶¶ 1, 12, 16.

From approximately 6:00 PM on September 8, 2020, to 2:00 AM on September 9, 2020, the evacuated AICs from OSCI—including Plaintiff—were placed in the yard at OSP while staff coordinated housing for them. Donaldson Decl. 1, ECF No. 91-2. There was only one bathroom available to AICs in the yard, so Plaintiff had to use the bathroom and expose herself in front of male AICs without any bodily privacy. *Id.*

The displaced AICs were moved from the yard to cells inside of the facility early on September 9, 2020. *Id.* at 1-2. Plaintiff stated that she was placed in a cell with two beds and that a male AIC was placed in the other bed in Plaintiff's cell. Pl. Decl. 1-2. She stated that the male AIC assaulted her in their cell. *Id.* Plaintiff testified that she reported the assault to an OSP staff member who later removed the AIC from the cell. *Id.* at 2. Plaintiff filed a Grievance Form on September 10, 2020, for being housed with the male AIC. Corrigan Decl., Ex. 6 at 2, ECF No. 106. The grievance form described that Plaintiff feared assault, but did not report that any such assault took place. *Id.*

Plaintiff was moved from the cell into an all-male dorm on September 10, 2020. Donaldson Decl. 2. Plaintiff stated that the dorm offered her no bodily privacy. Pl. Decl. 2. Plaintiff's cellmate Shawna Donaldson stated that although she and Plaintiff "put curtains around the bunk so [they] had a place to change [their] clothing and feel safe, . . . this did not prevent

Page 2 — OPINION AND ORDER

male AIC[]s from viewing [them] nude in [their] bunk area." Donaldson Decl. 3. Plaintiff and Donaldson "were sexually harassed every day [they] were there[,] even in front of staff, yet staff did nothing to stop it[] and even engaged in disrespectful slander towards [Plaintiff] and other transgender AIC[]s . . . with [the] male AIC[]s that were housed . . . with [them]." Donaldson Decl. 3. In addition, Donaldson testified that she saw male AICs "grab[] [Plaintiff's] butt, touch[] her breast, and [make] sexual advances towards her . . . in the stairwell where there [were] no cameras and no guard," when they walked to and from the dorm. Donaldson Decl. 5. Plaintiff filed a grievance related to these conditions on September 25, 2020. Corrigan Decl., Ex. 8 at 2. The grievance mentions verbal harassment but does not indicate any assault. *Id.*

Plaintiff testified that she "was forced to shower in plain view of male AIC[]s and male staff, fully exposing [her] nude body." Pl. Decl. 2. Brandy Morrison, another transgender female AIC, stated that she, Donaldson, and Plaintiff, by being made to use the bathroom and shower in front of men, were subjected to sexual harassment, and they were "made to basic[al]ly be a peep show" for the men. Morrison Decl. 1, ECF No. 91-4. Plaintiff stated that Defendants allowed male AICs to "come up to the shower windows and peer into the showers and view [P]laintiff" without repercussions. Pl. Decl. 2. She also overheard Defendants "bad mouthing and speaking derogatorily and using hate speech about [Plaintiff] to and with male AIC[]s." *Id.*

OSP Staff eventually allowed all the transgender female AICs to shower together at the same time without male AICs present. Pl. Decl. 2. However, in doing so, the staff shut down the "dayroom, dayroom tables and the [AICs'] ability to watch TV" during recreational time, which in effect punished the male AICs in exchange for allowing the transgender women to shower in a safe environment. Pl. Decl. 2; Donaldson Decl. 4. Four other AICs who were present confirmed that OSP staff "made a huge deal of the transgender shower time (loudly) in the presence of all

other AIC[]s in the overcrowded dorm, and intentionally closed the dayroom," letting the entire dorm know that it was due to Plaintiff's complaints. Marie Decl. 1-2, ECF No. 91-3; Watson Decl. 1-2, ECF No. 91-5; Ferres Decl. 1-2, ECF No. 91-6; Williams Decl. 1-2, ECF No. 91-7. Both Plaintiff and Donaldson stated that, as a result of the shutdown of the dayroom, they were threatened with bodily harm by male AICs if they did not stop showering. Pl. Decl. 2; Donaldson Decl. 5.

Showers were optional while Plaintiff was housed in the dorm, and AICs were permitted to wear clothing in the shower if they wanted to. Porter Decl. ¶¶ 36, 37. In addition, OSP staff conducted a Screening Tool Assessment, compliant with the Prison Rape Elimination Act ("PREA"), to determine the vulnerability of Plaintiff on September 10, 2020. *Id.* at ¶ 22; *Id.*, Ex. 5 at 1 ("PREA Assessment"). The assessment was not completed, and it stated that Plaintiff "Refused Screening." PREA Assessment 1. Cynthia Porter, the Sexual Abuse Liaison at the time, stated:

> [I]f a transgender person reported to any unit officer that they were having issues with showering or wanted a private shower, the issue would have come to [Porter]. [Porter did] not recall hearing any issues at that time. . . . Likewise, if [Plaintiff] had completed the September 10, 2020, PREA assessment and requested a private shower, that would have been forwarded to me for accommodation, but [Plaintiff] refused the assessment.

Porter Decl. ¶¶ 38-39. Plaintiff and Donaldson both stated that they asked OSP staff to provide them with accommodations, such as putting curtains around the shower or allowing them to shower elsewhere, but testified the staff met them with aggression and denied their requests. Pl. Decl. 2; Donaldson Decl. 4.

**STANDARD**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute

as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## DISCUSSION

Defendants move for summary judgment against Plaintiff's claims, while Plaintiff seeks summary judgment in her favor. In addition to the parties' substantive arguments on Plaintiff's Section 1983 claims for violations of the Eighth and Fourteenth Amendments, the parties raise several threshold issues, including (A) Plaintiff's Motion to Disqualify Witness; (B) whether portions of Plaintiff's claims are barred under the Prison Litigation Reform Act ("PLRA") for failure to exhaust administrative remedies, and (C) whether Plaintiff may recover mental or emotional damages in light of the PLRA's physical injury requirement. The Court addresses each of these threshold issues in turn before turning to the merits of the parties' cross-motions on Plaintiff's claims.

I.      **Threshold Issues**

    A.      **Plaintiff's Motion to Disqualify Witness**

Plaintiff moves the Court to disqualify Captain Cynthia Porter as a witness. ECF No. 144. Defendants' briefing on the parties' cross-motions relies in part on a declaration from Captain Porter and related exhibits. Plaintiff's motion accuses Captain Porter of perjury and forgery in her declaration and exhibits. Plaintiff's accusations are based on her own testimony coupled with a series of assumptions and deductions Plaintiff draws from Captain Porter's submission. The Court has reviewed Captain Porter's declaration and exhibits and finds no basis to disqualify her as a witness. The alleged irregularities Plaintiff identifies in her motion involve a credibility determination firmly in the province of the jury. *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor."). Thus, the Court will view this evidence as it must: in the light most favorable to Plaintiff for purposes of Defendants' motion, and in the light most favorable to Defendants for purposes of Plaintiff's motion. Plaintiff's Motion to Disqualify Witness is denied.

    B.      **Exhaustion of Administrative Remedies**

Under the PLRA, AICs must exhaust all available administrative remedies before filing a federal action to redress prison conditions or incidents. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong"). The exhaustion requirement is mandatory and requires compliance with both procedural and substantive elements of the facility's administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85, 90 (2006). Further, an AIC must exhaust all available grievance remedies before filing a § 1983 complaint, including appealing grievance decisions to the highest level. *Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017).

If the defendant shows that the plaintiff did not exhaust an available administrative remedy, "the burden shifts to the prisoner to come forward with evidence showing that there is something in [their] particular case that made the existing and generally available administrative remedies effectively unavailable to [them]." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). This burden is met when the plaintiff shows that they took "reasonable and appropriate steps" to pursue administrative remedies, but that prison officials interfered with the plaintiff's attempts to exhaust or failed to follow correct grievance protocol. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010).

Here, Defendants contend that Plaintiff failed to exhaust her administrative remedies to the extent that her claims relate to alleged sexual or physical assault while she was housed at OSP. In support of their motion, Defendants first describe the applicable administrative remedies and then offer evidence that Plaintiff failed to exhaust them.

1. <u>Applicable Administrative Remedies</u>

ODOC grievances are governed by administrative rule. Corrigan Decl. ¶ 8, Ex. 1.[1] AICs are informed about the grievance procedure during an orientation when they arrive at the facility (or during a makeup class if the AIC misses the orientation), and it is also outlined in handbooks

---

[1] The Administrative Rules have been amended since the events underlying this lawsuit. The Court's citation to the Oregon Administrative Rules ("OAR") throughout this opinion refer to the version of the rules in effect at the time, which is attached as Exhibit 1 to the Corrigan Declaration.

Page 7 — OPINION AND ORDER

received by AICs and on the grievance form and grievance appeal form itself. *Id.* at ¶¶ 10, 11; Exs. 2-4.

Under the rules, AICs are generally encouraged to communicate with line staff orally or in writing as their primary means of resolving disputes prior to filing a grievance in order to handle questions and complaints. OAR 291-109-0100(3)(a). But if that communication does not resolve the issue, the AIC may file a grievance. OAR 291-109-0100(3)(b). Among other things, an AIC may grieve: the "[m]isapplication of departmental policies, rules, or other directives;" and "[u]nprofessional actions of employees." OAR 291-109-0210(3)(a), (b).

Although grievances must ordinarily be received by the institution grievance coordinator or designee within 14 calendar days from the date of the incident or issue being grieved, *see* OAR 291-109-205(1), there is no time limit on when an AIC may report sexual abuse by another AIC. OAR 291-109-0245(3). A grievance response will be sent to the AIC within 35 calendar days. OAR 291-109-205(2).

The rules also provide for two levels of appeal of a grievance response. The initial appeal of a grievance "must be received by the institution . . . within 14 calendar days from the date [that the response to the grievance] was sent to the AIC[,] unless the AIC can satisfactorily demonstrate why the initial appeal could not be timely filed." OAR 291-109-0205(3). After an initial appeal, an AIC may submit a final appeal. OAR 291-109-0205(5). Similarly, the final appeal must be filed within 14 calendar days from the date of the response to the initial appeal. OAR 291-109-0205(5). The response to this level of appeal is final. Corrigan Decl. ¶ 21.

    2. <u>Analysis</u>

Defendants' motion with respect to exhaustion concerns only Plaintiff's claims related to sexual or physical assault by another AIC or AICs. Defendants have included with their motion for summary judgment all grievances received from Plaintiff related to her stay at OSP during

Page 8 — OPINION AND ORDER

the evacuation of OSCI. Corrigan Decl. ¶ 6. While Plaintiff did file a grievance related to her concerns about being housed with a male—and in particular with an unnamed AIC whom Plaintiff *feared* would assault her—none of the grievances report or complain of any sexual or physical assault by another AIC. *Id.*; Exs. 6-8. Nor did Plaintiff report any sexual or physical assault during the PREA investigation that was opened in response to her grievance. *See* Porter Decl. ¶¶ 40-41; Ex. 8. Accordingly, Defendants have carried their burden to show that Plaintiff did not grieve—and therefore did not exhaust administrative remedies—related to her alleged assault by another AIC.

   Defendants have demonstrated Plaintiff's failure to exhaust administrative remedies. The burden shifts to Plaintiff to "come forward with evidence showing that there is something in [her] particular case that made the existing and generally available administrative remedies effectively unavailable to [her]." *Albino*, 747 F.3d at 1172. Here, Plaintiff makes several arguments why she believes she has exhausted administrative remedies. First, Plaintiff argues that her verbal report of the assault satisfies exhaustion because "there is no actual grievance process" for complaints related to PREA. Pl.'s Resp. 4, ECF No. 122. Plaintiff notes that because all PREA-related grievances are "immediately closed and . . . reported to PREA personnel," failing to grieve such issues "produces the same result" as grieving them: the issues are investigated as required under PREA. *Id.* Nevertheless, the Court is bound by the requirements of PLRA and the grievance process applicable to Plaintiff. As Defendants point out in their reply, there is nothing in PREA which suggests it preempts the exhaustion requirement of the PLRA. *See, e.g.*, *Porter v. Howard*, 531 F. App'x 792, 793 (9th Cir. 2013) (plaintiff not "excused from the requirement that he file an administrative grievance by operation of the [PREA]"). Moreover, despite her position that there is no grievance process for PREA, the

Page 9 — OPINION AND ORDER

record shows that Plaintiff has filed PREA-related grievances in the past, some of which were denied, and some of which resulted in a response. *See* Corrigan Decl. Ex. 5. Indeed, the grievance Plaintiff filed regarding the conditions at OSP and her harassment by other AICs implicated PREA, resulting in a PREA investigation. *See* Corrigan Decl. Ex. 8. In sum, Plaintiff's perception that the grievance process is superfluous for PREA-related issues does not relieve her of her obligation to comply with it before filing suit as required by the PLRA.

Second, Plaintiff argues that she should not be required to exhaust administrative remedies because her distress and PTSD led her to inadvertently omit the full details of the alleged assault in her grievances. However, Plaintiff asserts that she did report the assault to prison staff at the time of the events, indicating that she was capable of grieving it. *See* Pl. Decl. 2. In addition, there is no time limit for an AIC to file a grievance related to a sexual assault by another AIC. OAR 291-109-0245(3). More than a year elapsed from the alleged assault to the date of the Complaint, during which time she would have become capable of recalling the details of the alleged assault because it is pled in the Complaint. Given the lack of a time limit for reporting assault, Plaintiff could have and was required to avail herself of the grievance process before filing suit. Plaintiff provides no reasonable explanation for why she did not file a grievance related to the assault at any point before filing this lawsuit and has therefore failed to show that administrative remedies were unavailable to her.

Finally, Plaintiff contends that she was denied the ability to file grievances because grievances were denied. However, Plaintiff's grievance related to the harassment she suffered as a result of the dormitory and shower arrangements at OSP was accepted, Corrigan Decl. Ex. 8, and that grievance did not convey that any physical or sexual assault took place. Plaintiff has

failed to carry her burden to show that administrative remedies were effectively unavailable to her.

Accordingly, because Plaintiff failed to exhaust administrative remedies related to her alleged sexual or physical assault by another AIC while housed at OSP, her claims are barred to the extent they relate to such assault or assaults. Defendants' motion for summary judgment is granted in that limited respect based on the affirmative defense of exhaustion.

### C.    PLRA Physical Injury Requirement

Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C § 1997e(e). Such physical injury "need not be significant but must be more than *de minimis*." *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002).

Defendants move for summary judgment on Plaintiff's claims "to the extent that [Plaintiff] is seeking mental or emotional damages." Defs.' Mot. 14. Reading Plaintiff's Complaint and summary judgment briefing and evidence liberally, Plaintiff is proceeding on two theories against Defendants for: (1) forcing her to use shower and toilet facilities within view of male correctional officers and inmates in violation of the Fourteenth Amendment and (2) failing to protect her from harassment by other inmates in violation of the Eighth Amendment.[2]

Having reviewed the summary judgment record—and excluding those allegations barred based on failure to exhaust administrative remedies—the Court agrees that Plaintiff has provided

---

[2] While Plaintiff's summary judgment briefing and related evidence discusses smoke inhalation and COVID-19 conditions at OSP, those claims were not among those which survived the Court's screening of Plaintiff's Complaint. ECF No. 8. Moreover, there is no evidence in the record that any of the remaining Defendants in this case had any role in creating the smoke and COVID-19 conditions.

Page 11 — OPINION AND ORDER

no evidence from which a jury could find that she suffered physical injury. Therefore, Defendants' motion for summary judgment is granted in that limited respect based on the PLRA. The Court notes, however, that other damages are still available for those claims. *See Oliver*, 289 F.3d at 630 (Section 1983 claim not barred by PLRA's physical injury requirement "[t]o the extent [the plaintiff] has actionable claims for compensatory, nominal or punitive damages."). Thus, Plaintiff's failure to provide evidence of physical injury does not fully dispose of her claims, and the Court proceeds to the parties' summary judgment motions on the merits of Plaintiff's claims.

## II.  Section 1983

The parties cross-move for summary judgment on Plaintiff's First Claim for Relief against Defendants Hyde, Ross, and Garfield for allegedly (1) forcing her to use shower and toilet facilities within view of male correctional officers and inmates in violation of the Fourteenth Amendment and (2) failing to protect her from harassment by other inmates in violation of the Eighth Amendment. The Court addresses each claim in turn.

### A.  Fourteenth Amendment Claim

The parties cross-move for summary judgment on Plaintiff's Fourteenth Amendment clam, which alleges that the prison conditions during Plaintiff's temporary housing at OSP violated her right to bodily privacy. As explained by the Ninth Circuit, "the security of one's privacy against arbitrary intrusion by the police is basic to a free society and is therefore 'implicit in the concept of ordered liberty,' embraced within the Due Process Clause of the Fourteenth Amendment." *York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963). Further, "[s]hielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex[,] is impelled by elementary self-respect and personal dignity." *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988); *see also Byrd v. Maricopa Cty. Bd.*, 845 F.3d 919, 923-24 (9th Cir.

2017). This right to privacy extends to prison inmates, *Sepulveda v. Ramirez*, 967 F.2d 1413, 1415 (9th Cir. 1992), and is violated when the view of the inmate is "frequent[] and up close" or "neither obscured nor distant." *Byrd*, 845 F.3d at 919, 922, 924. However, an official does not violate an inmate's privacy rights where the view of the inmate is "restricted by distance, casual in nature, and justified by security needs." *Ioane v. Hodges*, 939 F.3d 945, 953 (9th Cir. 2018) (internal quotations and citation omitted).

      Viewing the evidence in the light most favorable to Plaintiff, as this Court must in resolving Defendants' summary judgment motion, there is a genuine issue of fact as to whether Defendants violated Plaintiff's right to bodily privacy. While Defendants contend that they are entitled to summary judgment because showers were optional and the arrangements were incidental to the exigent circumstances created by the wildfire evacuation, there are facts from which a jury could find in Plaintiff's favor. In particular, Plaintiff's assertion that Defendants "let[] AIC[]s come up to the shower windows and peer into the showers and view the plaintiff," Pl. Decl. 2, could permit a jury to conclude that the invasion of Plaintiff's privacy was not casual in nature nor justified by security needs or exigent circumstances.

      Defendants argue that they are entitled to summary judgment because Plaintiff could have protected her own bodily privacy by choosing not to shower or could have worn clothes to protect her privacy while in the shower. But Defendants present no case law which would require the Court to withdraw a bodily privacy claim from the jury's consideration based on these facts. While Plaintiff may have opted in to showering unclothed, there is no evidence that she opted in to having her privacy invaded while doing so, because there is no evidence Plaintiff knew that Defendants would allow other AICs to come up to the window and view her before she chose to

Page 13 — OPINION AND ORDER

shower. Thus, genuine issues of material fact remain, and Defendants are not entitled to summary judgment on Plaintiff's Fourteenth Amendment bodily privacy claim.

Genuine issues of material fact also preclude summary judgment for Plaintiff on this claim. It is for the jury to view the facts presented in this case and decide whether they violate Plaintiff's Fourteenth Amendment right to bodily privacy. Both parties' motions for summary judgment on this claim are denied.

### B. Eighth Amendment Claim

The parties also cross-move for summary judgment on Plaintiff's Eighth Amendment claim. As noted above, Plaintiff's failure to exhaust administrative remedies with respect to any alleged physical assault disposes of the portion of this claim pertaining to Defendants' failure to protect her from such assault. Thus, the scope of Plaintiff's remaining Eighth Amendment claim is that Defendants' failure to protect Plaintiff from harassment amounted to an infringement of her right to be free from cruel and unusual punishment.

To prove an Eighth Amendment violation based on prison conditions, the claimant must satisfy a two-part test. First, under the objective part of the test, they must show that "defendants deprived the plaintiff of the minimal civilized measure of life's necessities." *Grenning v. Miller-Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014) (internal quotation and citation omitted). Second, the subjective part of the test requires a showing that the defendants acted with deliberate indifference. *Id.* As to the objective prong,

> *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.

*Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

Page 14 — OPINION AND ORDER

Ninth Circuit case law is clear that verbal harassment and even threats are insufficient to establish an Eighth Amendment violation. *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (Verbal harassment or abuse does not state a claim under 42 U.S.C. § 1983); *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (verbal threats of harm do not violate the Eighth Amendment); *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) ("Although prisoners have a right to be free from sexual abuse . . . the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment.") (internal citation omitted).

Plaintiff presents evidence that as a result of the conditions at OSP, she was subject to harassment by other AICs. Here, taking into account the events properly grieved, Plaintiff presents evidence of harassment and threats throughout her time at OSP during the wildfire evacuation. However, under the case law set forth above, such facts—even in the light most favorable to Plaintiff—do not amount to an Eighth Amendment violation. Defendants are therefore entitled to summary judgment against Plaintiff's Eighth Amendment Claim.

### III.  Qualified Immunity

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). The purpose of qualified immunity is to "strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (quoting *Pearson*, 555 U.S. at 231). Qualified immunity "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (quotation marks and citation omitted).

> Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case.

*Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Here, the Court has already found that Plaintiff has presented sufficient evidence from which a reasonable jury could find that Plaintiff's Fourteenth Amendment right against invasion of her bodily privacy was violated. Thus, the remaining question is whether the right allegedly violated was clearly established in light of the specific context of the case.

The Supreme Court has emphasized that the asserted right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (brackets and internal quotation marks omitted).

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority[.]' " It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know.

*District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citations omitted). While qualified immunity does not require "a case directly on point, [ ] existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

With respect to Plaintiff's Fourteenth Amendment right against invasion of bodily privacy, in the Ninth Circuit, "[w]hile the circumstances of institutional life demand that privacy be limited, it is clearly established that gratuitous invasions of privacy violate the Fourteenth Amendment." *Hydrick v. Hunter*, 500 F.3d 978, 1000 (9th Cir. 2007), *judgment vacated on other*

*grounds,* 556 U.S. 1256 (2009). Plaintiff's assertion that Defendants "let[] AICs come up to the shower windows and peer into the showers and view the plaintiff," if true, amounts to a gratuitous invasion of Plaintiff's privacy. Because it was clearly established that gratuitous invasions of privacy violate the Fourteenth Amendment, Defendants are not entitled to qualified immunity. Defendants' motion for summary judgment against Plaintiff's Fourteenth Amendment claim on the basis of qualified immunity is denied.

## CONCLUSION

For the reasons above, Plaintiff's Motion to Disqualify Witness (ECF No. 144) is DENIED. Plaintiff's Motion for Summary Judgment (ECF No. 91) is DENIED. Defendant's Motion for Summary Judgment (ECF No. 105) is GRANTED IN PART as follows:

- Defendants are entitled to summary judgment against Plaintiff's claims to the extent that they relate to alleged physical or sexual assault.
- Defendants are entitled to summary judgment against any emotional distress or mental damages.
- Defendants are entitled to summary judgment against Plaintiff's Eighth Amendment Claim.

Defendants' Motion for Summary Judgment is otherwise denied.

DATED this 10th day of March 2025.

s/ Mustafa T. Kasubhai<br>
MUSTAFA T. KASUBHAI (He / Him)<br>
United States District Judge